[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-13691
Non-Argument Calendar
_____

D.C. Docket No. 2:14-cv-00726-SPC-MRM

KENNETH COLEMAN,

                Plaintiff-Appellant,

versus

T. BOWDEN, et al.,

                Defendants,

SGT.WALKER,

                Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(December 9, 2019)

Before JORDAN, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Kenneth Coleman, a Florida prisoner proceeding *pro se*, brought a civil rights action under 42 U.S.C. § 1983 against six prison officials: T. Bowden, L. Severson, Major Colon, Sergeant J.D. Rios, Sergeant Walker, and Sergeant Laux.  He appeals the following orders issued by the district court in his case: (1) the order dismissing claims against T. Bowden for failure to state a claim and dismissing all other claims for failure to exhaust administrative remedies, except for the retaliation claim against Sergeant Walker; (2) the order denying his motion to compel the production of his medical records; (3) the order denying his motion for leave to file a second amended complaint; and (4) the order granting summary judgment in favor of Sergeant Walker on the retaliation claim.  For the following reasons, we affirm.

**I**

Mr. Coleman's claims predominantly arise from an incident that occurred on the evening of October 9, 2012, while he was incarcerated at Charlotte Correctional Institution in Punta Gorda, Florida.  He alleges that on that night, his cellmate Kenneth Jones attacked him while he was sleeping, punching him in the face and eyes, kicking him in the hip, and slamming him to the floor.  As a result of the attack, Mr. Coleman suffered permanent damage to his body, has to wear bifocals, and his left eye sags.

Mr. Coleman claims the defendants' deliberate indifference to his safety, in violation of his Eighth Amendment rights, resulted in the attack.  In addition to the

claims stemming from the attack, Mr. Coleman asserts that Sergeant Walker verbally threatened him and "schemed to force [him] to live with his enemy" in retaliation for grievances that Mr. Coleman had filed against him, in violation of his First Amendment rights.

Mr. Coleman filed a number of grievances with prison officials between June of 2011 and November of 2013. Four of them are relevant here.

First, on October 23, 2011, Mr. Coleman filed an inmate request to the warden complaining that, when he was placed in administrative confinement, Sergeant Walker failed to call the B-dormitory (where Mr. Coleman had been housed) to tell them to pack up and store Mr. Coleman's property. The grievance was denied because Mr. Coleman's property had been properly packed and stored. Mr. Coleman alleged that Sergeant Walker "made verbal threats" to him after he filed this grievance, telling Mr. Coleman that "someone is going to take care of [him] for writing [Sergeant Walker] up, for leaving [his] personal property inside [the] B-dormitory[.]" D.E. 81 at 11.

Second, on November 10, 2011, Mr. Coleman submitted an "emergency" grievance to T. Bowden, the Secretary's representative for the Florida Department of Corrections ("FDOC"), stating that Sergeant Walker was trying to get Mr. Coleman beat up or stabbed by other inmates. Mr. Coleman claims that when T. Bowden took too long to answer, he cut his wrist with a razor. As a result, he was

3

placed at Lake Correctional Institution's Mental Health Unit from April 3, 2012 to August 13, 2012.

Third, on December 14, 2012, Mr. Coleman filed a grievance with the warden of Martin Correctional Institution, where he was then housed, complaining that he had informed Sergeant Rios that he and Mr. Jones "were not getting along," but Sergeant Rios did not move him to a different cell. He also asserted that staff members at Charlotte Correctional Institution placed him in a cell with Mr. Jones in retaliation for filing grievances against them. The grievance was returned without action because it addressed more than one issue.

Fourth, instead of correcting this deficiency, on January 18, 2013, Mr. Coleman filed a grievance directly with the Secretary of the FDOC, asserting that the prison staff "conspired" to house him in a cell with Mr. Jones. His appeal was returned because it was not compliant with the inmate grievance procedures.

## II

Defendants Bowden, Colon, Severson, and Walker moved to dismiss the amended complaint.[1] The district court granted the motion in part, dismissing all of Mr. Coleman's claims except the retaliation claim against Sergeant Walker. The district court dismissed the claims against T. Bowden for failure to state a claim, as

---

[1] Neither Sergeant J.D. Rios nor Sergeant Laux were served with process.

the only allegations against her were based on her review of administrative grievances submitted to the FDOC.

The district court dismissed the deliberate indifference claims against the remaining defendants because Mr. Coleman did not properly exhaust administrative remedies. The December 14, 2012, and January 18, 2013, grievances did not comply with the grievance procedures, and Mr. Coleman did not demonstrate that he was exempt from complying with the grievance process. The district court concluded, however, that Mr. Coleman exhausted his retaliation claim against Sergeant Walker and allowed that sole claim to proceed.

Mr. Coleman then moved to compel Sergeant Walker to produce documents, including his medical and mental health records. The district court denied this request because these records were unrelated to the remaining retaliation claim.

On May 19, 2017, Sergeant Walker moved for summary judgment. Before the district court ruled on the motion, Mr. Coleman moved for leave to file a second amended complaint. The district court denied leave to amend because it would cause undue delay and prejudice.

In his summary judgment motion, Sergeant Walker denied retaliating against Mr. Coleman, explaining that he had little interaction with Mr. Coleman as Mr. Coleman was only assigned to his housing unit for one week. He submitted a prison record confirming that Mr. Coleman was only in his unit (the "B-Dormitory") from

October 4, 2011, to October 11, 2011. Sergeant Walker further contended he did not place Mr. Coleman in a cell with his enemies, as he has no control over the assignment of inmates to cells. In support, he submitted an affidavit of Kara Williams, the Assistant Warden of Programs at Charlotte Correctional Institute, verifying that cell assignments are not done by the security staff assigned to the housing unit.

In his response in opposition, Mr. Coleman set forth new facts not alleged in the amended complaint. In the amended complaint, Mr. Coleman alleged that Sergeant Walker retaliated against him for the October 23, 2011, grievance by placing him in a cell with his enemies. In the response in opposition, however, Mr. Coleman claimed that Sergeant Walker failed to properly secure his property in retaliation for his threatening to file a grievance against him on October 12, 2011.

The district court granted summary judgment in favor of Sergeant Walker. It explained that Mr. Coleman could not base his retaliation claim on a factual scenario not alleged in the amended complaint. The district court further explained that Sergeant Walker was entitled to summary judgment on the retaliation claim that was alleged because Mr. Coleman could not show a causal connection between the grievance and the alleged adverse action. Namely, Sergeant Walker could not have placed Mr. Coleman in a cell with his enemies, because the undisputed evidence showed that Mr. Coleman was not assigned to Sergeant Walker's housing unit any

6

time after he filed the grievance and that Sergeant Walker was not in charge of cell assignments.

Mr. Coleman appealed.

### III

On appeal, Mr. Coleman raises five arguments: (a) the district court erred in dismissing his claims against T. Bowden for failure to state a claim for relief; (b) the district court erred in dismissing the remaining deliberate indifference claims for failure to exhaust administrative remedies; (c) the district court abused its discretion in denying his motion to compel the production of his medical and mental health records and stored property slips; (d) the district court abused its discretion in denying his motion for leave to file a second amended complaint; and (e) the district court erred in granting Sergeant Walker's motion for summary judgment on the First Amendment retaliation claim. We address each argument in turn.

### A

We review the district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) *de novo*, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff. *See Timson v. Sampson*, 518 F.3d 870, 872 (11th Cir. 2008). To survive a motion to dismiss, the complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *Pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014) (citation omitted).

"A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (internal quotation marks omitted). To plead a deliberate indifference claim, the plaintiff must allege facts sufficient to show: "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016) (citation and internal quotation marks omitted). The second element has three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Id*. at 1308 (citation and internal quotation marks omitted).

The district court did not err by dismissing Mr. Coleman's deliberate indifference claim against T. Bowden. Her only alleged involvement in this case was reviewing an "emergency" grievance as the Secretary's representative for the FDOC and returning the grievance without action because the institution should have been given an opportunity to resolve the issue. Denying Mr. Coleman's grievance for this reason is not sufficient to show that she had "subjective knowledge of a risk of serious harm" and "disregarded that risk." *See id*. *See also Johnson v.*

*Doughty*, 433 F.3d 1001, 1010–11 (7th Cir. 2006) (affirming summary judgment in favor of prison officials who denied the plaintiff's grievances because they responded reasonably to the grievances and did not evince a "sufficiently culpable state of mind" to be deliberately indifferent).

Nor did Mr. Coleman state a claim against T. Bowden based on her position with the FDOC. "It is well established that § 1983 claims may not be brought against supervisory officials on the basis of vicarious liability or respondeat superior." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (citation omitted). A supervisor may be liable under § 1983 only if she "personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional violation." *Id*. (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003)). Mr. Coleman has not alleged facts to show that Ms. Bowden "personally participate[d]" in, or directly caused, him to be attacked by his cellmate. *See id*. *See also Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[A] denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983.").

## B

Under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), a prisoner may not bring suit regarding prison conditions under § 1983 until he exhausts all available

administrative remedies.  In reviewing a motion to dismiss for failure to exhaust administrative remedies, the district court may "consider facts outside of the pleadings and [ ] resolve factual disputes so long as the factual disputes do not decide the merits and the parties have a sufficient opportunity to develop the record." *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008).  We review the district court's interpretation and application of the PLRA's exhaustion requirement *de novo* and its factual findings for clear error.  *Bingham v. Thomas*, 654 F.3d 1171, 1174–75 (11th Cir. 2011).

"The PLRA requires 'proper exhaustion' that complies with the 'critical procedural rules' governing the grievance process."  *Dimanche v. Brown*, 783 F.3d 1204, 1210 (11th Cir. 2015) (quoting *Woodford v. Ngo*, 548 U.S. 81, 95 (2006)).  In Florida, a prisoner must follow a three-step process: first, he must file an informal grievance with a designated prison staff member; second, he must file a formal grievance with the institution's warden; and third, he must submit an appeal to the Secretary of the FDOC.  *Chandler v. Crosby*, 379 F.3d 1278, 1288 (11th Cir. 2004) (citing Fla. Admin. Code §§ 33-103.005–103.007).

The district court did not err in dismissing Mr. Coleman's deliberate indifference claims for failure to exhaust administrative remedies.  The record reflects that the only grievance filed at the institutional level raising issues regarding security checks, improper inmate housing, or the attack by Mr. Jones was the

grievance filed with the warden of Martin Correctional Institution on December 14, 2012. That grievance did not comply with Florida's grievance procedures because it addressed more than one issue. *See* Fla. Admin. Code. § 33-103.014. As a result, it was returned without action, and Mr. Coleman was advised to submit one grievance per issue and given an opportunity to refile the grievance.

Rather than refile as directed, Mr. Coleman filed an appeal directly with the Secretary of the FDOC on January 18, 2013. That appeal did not comply with the "critical procedural rules governing the grievance process," as it was filed directly with the Secretary without going through the sequential three-step process. *Dimanche*, 783 F.3d at 1210 (internal quotation marks omitted).

Mr. Coleman argues that he was unable to exhaust his administrative remedies while he was in the Lake Correctional Institution Mental Health Unit because he did not have access to writing instruments or grievance forms. But the undisputed evidence establishes that he was in that unit *before* he was attacked by Mr. Jones. Thus, this does not excuse Mr. Coleman from filing a proper grievance about the October 9, 2012 incident.

Mr. Coleman also asserts that he was exempt from filing a grievance at the institutional level because he was being threatened with retaliation by prison staff at

Charlotte Correctional Institution.² But the alleged threats by officers at Charlotte Correctional Institution does not explain why Mr. Coleman could not have filed a grievance internally at Martin Correctional Institution, where he was housed at the time he filed the December 2012 and January 2013 grievances. *See Bryant v. Rich*, 530 F.3d 1368, 1379 (11th Cir. 2008) (rejecting prisoner's argument that he was exempt from filing a grievance, even though he feared violent reprisals by prison officials, because he had been transferred to another prison where the threat of violence was removed).

In addition, a prison official's threats of retaliation against a prisoner only make the administrative remedy "unavailable" if: "(1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance[.]" *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008). Here, any such threat did not actually deter Mr. Coleman from lodging a grievance at the institutional level, as he did indeed file a grievance (albeit improperly) about the incident with the warden of Martin

---

² A prisoner may bypass the first two steps and submit a grievance directly to the Secretary if the grievance is a "grievance of reprisal," which is a grievance "alleging that staff have taken or are threatening to take retaliatory action against the inmate for good faith participation in the inmate grievance procedure." Fla. Admin. Code § 33-103.002(9). Though the district court did not find the January 18, 2013 grievance to be a "grievance of reprisal," it found that the November 10, 2011 grievance regarding Sergeant Walker could constitute a "grievance of reprisal," and thus Mr. Coleman exhausted that claim.

Correctional Institution a month earlier, on December 14, 2012. Thus, the district court did not err in concluding that Mr. Coleman failed to properly exhaust his administrative remedies for his claims arising out of the October 9, 2012 attack.

## C

We review a district court's denial of a motion to compel discovery for abuse of discretion. *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 837 (11th Cir. 2006). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1).

The district court correctly denied Mr. Coleman's motion to compel his medical and mental health records because they were not relevant to any pending claim, as the sole remaining claim at the time was the retaliation claim against Sergeant Walker. Mr. Coleman's argument regarding stored property slips likewise lacks merit, as the record reflects that Mr. Coleman did not seek property slips in his request for production or motion to compel.

## D

We review a district court's denial of leave to amend a complaint for abuse of discretion. *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1286 (11th Cir. 2003). Leave to amend may be denied if it would cause undue delay or prejudice. *See id.* at 1287.

At the time Mr. Coleman sought leave to amend, the district court had already permitted Mr. Coleman to amend the complaint once, the case had been pending for over two years, discovery had closed, and Sergeant Walker's motion for summary judgment was pending. The district court noted that Mr. Coleman did not show good cause for the delay, and the motion to amend appeared to be designed solely to delay consideration of Sergeant Walker's summary judgment motion. These are sufficient grounds to deny Mr. Coleman's motion. *See Lowe's Home Ctrs., Inc. v. Olin Corp.*, 313 F.3d 1307, 1315 (11th Cir. 2002) ("It is not an abuse of discretion for a district court to deny a motion for leave to amend a complaint when such motion is designed to avoid an impending adverse summary judgment motion"). *See also id.* ("[I]t is not an abuse of discretion for a district court to deny a motion for leave to amend following the close of discovery, past the deadline for amendments and past the deadline for filing dispositive motions"); *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008) (holding that the district court acted within its discretion in denying a motion for leave to amend because the motion was filed nearly seven weeks after the close of discovery and would have unduly prejudiced the defendants).

## E

We review a district court's grant of summary judgment *de novo*. *Rich v. Sec'y, Fla. Dep't of Corrs.*, 716 F.3d 525, 530 (11th Cir. 2013). Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The First Amendment prohibits prison officials from retaliating against a prisoner as a result of his filing a grievance concerning the conditions of his imprisonment. *See O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (quoting *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003)). To prevail on a retaliation claim, the prisoner must prove: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance]." *Id.* (citation and internal quotation marks omitted; alterations in original).

Construing the amended complaint liberally, Mr. Coleman alleged that Sergeant Walker retaliated against him for filing the October 23, 2011 grievance about his property by placing him in a cell with his enemies. But in his response in opposition to summary judgment, and on appeal, Mr. Coleman asserts an additional basis for his retaliation claim—that Sergeant Walker left his property unsecured in retaliation for Mr. Coleman threatening to file a grievance against him.

The district court correctly declined to consider the latter basis for the retaliation claim, as Mr. Coleman cannot raise a new, unpled claim at the summary

15

judgment stage. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004). Summary judgment was also proper on the retaliation claim that Mr. Coleman did plead. The undisputed evidence showed that Mr. Coleman could not establish a causal connection between his October 23, 2011, grievance and his cell assignment. First, Sergeant Walker submitted undisputed evidence that Mr. Coleman was only housed in his housing unit, the B-Dormitory, from October 4, 2011 to October 11, 2011—*before* Mr. Coleman filed the October 23, 2011 grievance. Second, Ms. Williams' affidavit establishes that security staff assigned to the housing unit, like Sergeant Walker, are not responsible for cell assignments. Thus, Sergeant Walker could not have caused the alleged adverse action and is entitled to summary judgment. *See Farrow*, 320 F.3d at 1248–49 (affirming summary judgment on prisoner's retaliation claim against nurse because the prisoner could not establish a causal connection between his complaints and the alleged denial of treatment by the nurse).

## IV

For the foregoing reasons, we affirm the district court's rulings.

**AFFIRMED.**

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

| | |
|---|---|
| David J. Smith<br>Clerk of Court | For rules and forms visit<br>www.ca11.uscourts.gov |

December 09, 2019

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 17-13691-GG
Case Style: Kenneth Coleman v. Walker
District Court Docket No: 2:14-cv-00726-SPC-MRM

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Joseph Caruso, GG at (404) 335-6177.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1 Ntc of Issuance of Opinion